UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER D. CRAFT,<br><br>    Plaintiff,<br><br>    v.<br><br>ELON MUSK, et al.,<br><br>    Defendants. | Case No. 23-cv-01644-JCS<br><br>**ORDER TO SHOW CAUSE RE DISMISSAL** |

## I. INTRODUCTION

This case was transferred to this District from the Federal District Court for the Southern District of New York ("the New York court") under 28 U.S.C. § 1404(a). Because the New York court granted Plaintiff's in forma pauperis application and conducted only a limited review of the complaint addressing where venue should lie, this Court must conduct a review of the merits of Plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B). *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). The Court has reviewed Plaintiff's complaint and finds that Plaintiff has failed to state any viable claim. Therefore, Plaintiff is ORDERED TO SHOW CAUSE why the complaint should not be dismissed.

## II. ALLEGATIONS OF THE COMPLAINT[1]

Plaintiff alleges in the Complaint that Defendants Twitter, Inc. and its CEO, Elon Musk, violated his First Amendment rights by blocking his Twitter account twice, for a period of seven days each, in February and March 2023. Compl. at 5. According to Plaintiff, he "didn't threaten

---

[1] Because the factual allegations of a plaintiff's complaint are generally taken as true in the context of determining whether the complaint states a claim, this section summarizes Plaintiff's allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case

anybody's lives or call for mass destruction of any kind on [his] Twitter post" but was simply "trying to wake up the sheeple that cannot see the destruction that Elon musk, the world economic forum, world health organization, center for disease control, social media, news, and corrupt government are creating for our once 'civilized' society." *Id.*

Plaintiff seeks $5 billion in damages and asks the Court to seize "all assets of Elon Musk and the Twitter platform . . . until the outcome of this complaint." *Id.* at 6.

## III.   ANALYSIS

### A.   Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir. 2007).  In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted).  The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

Where the complaint has been filed by a pro se plaintiff, courts must "construe the

1  pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d
2  338, 342 (9th Cir. 2010).  "A pro se litigant must be given leave to amend his or her complaint
3  unless it is absolutely clear that the deficiencies in the complaint could not be cured by
4  amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds
5  by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc).  Further,
6  when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must
7  provide the litigant with notice of the deficiencies in his complaint in order to ensure that the
8  litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d
9  1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant
10  will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th
11  Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B. Discussion

#### 1. First Amendment Claims

Plaintiff's claims under the First Amendment fail because [t]he text and original meaning of [the First Amendment], as well as [the Supreme Court's] longstanding precedents, establish that the [First Amendment] Free Speech Clause prohibits only governmental abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 204 L. Ed. 2d 405 (June 17, 2019).  "The Free Speech Clause does not prohibit private abridgment of speech." *Id.*   Action temporarily blocking Plaintiff's account by Twitter, which is a private company, and its CEO, Elon Musk, is not government action. *See Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, at *3 (N.D. Cal. Apr. 29, 2022) (holding on a Rule 12(b)(6) motion that plaintiff failed to state a claim for violation of the First Amendment by Twitter based on suspension of the plaintiff's Twitter account because Twitter's conduct constituted private abridgment of speech).

While there are limited circumstances under which a private individual's actions amount to state action, *see Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002), the Complaint contains no allegations that suggest any of these exceptions apply here. "The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the

1    governmental nexus test." *Id.*

2           Under the public function test, state action is present "'in the exercise by a private entity of
3    powers traditionally exclusively reserved to the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1118
4    (9th Cir. 1997) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)). For
5    example, the Supreme Court has found that the power to conduct elections of public officials falls
6    within this exception. *Id.* There are no allegations in the Complaint that plausibly allege either
7    Twitter or Musk's actions involved the exercise of any power exclusively reserved to the state.

8           "The joint action test for state action is met where private persons are 'willful participant[s]
9    in joint activity with the State or its agents' that effects a constitutional deprivation." *Id.* Plaintiff
10   in this case has not alleged any facts suggesting that either Twitter or Musk conspired in any way
11   with the state or its agents. *See Berenson*, 2022 WL 1289049, at *3 (holding that plaintiff whose
12   account was suspended by Twitter did not allege joint action for the purposes of First Amendment
13   claim). Therefore, the joint action test also does not apply.

14          A private individual also may be found to be a state actor "where the state has 'exercised
15   coercive power or has provided such significant encouragement, either overt or covert, that the
16   [private actor's] choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113
17   F.3d at 1119 (9th Cir. 1997) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Again, there
18   are no allegations in the Complaint that raise a plausible inference that either Twitter or Musk's
19   actions constitute state action under this test.

20          Finally, under the nexus test, courts "consider whether there is a 'sufficiently close nexus
21   between the State and the challenged action of the regulated entity so that the action of the latter
22   may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson*, 419 U.S. at 351). This test
23   is generally subsumed by the joint action test. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995
24   n.13 (9th Cir. 2013). Defendants' actions, as alleged in the Complaint, do not satisfy the nexus
25   test. As Judge Alsup observed in Berenson, "Twitter 'may be a paradigmatic public square on the
26   Internet, but it is not transformed into a state actor solely by providing a forum for speech.'" 2022
27   WL 1289049, at *3 (quoting *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020)
28   (cleaned up, quotation omitted)).

For these reasons, Plaintiff's claims under the First Amendment fail to state a claim as to either Twitter or Musk.

### 2. Section 230 of the Communications Decency Act of 1996

Even if Plaintiff had sufficiently alleged state action by Twitter and Musk, his claims fail under Section 230 of the Communications Decency Act of 1996 ("CDA"), which provides, "No provider or user of an interactive computer service shall be held liable on account of -- any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A). "For an internet platform like Twitter, Section 230 precludes liability for removing content and preventing content from being posted that the platform finds would cause its users harm[.]" *Berenson*, 2022 WL 1289049, at *2. To avoid immunity under Section 230, Plaintiff would need to allege facts that raise a plausible inference that in blocking his account, Twitter did not act in good faith. *Id.* Plaintiff has included no such allegations in his complaint.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed. Plaintiff may respond by filing either an amended complaint that cures the deficiencies discussed above or a response that addresses why his current complaint is sufficient. Plaintiff's response shall be filed by **May 9, 2023**. If Plaintiff does not file a response by that date, the case will be reassigned to a United States district judge with a recommendation that it be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Any amended complaint must include the caption and civil case number used in this order (23-cv-01644) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of Plaintiff's original complaint by reference, but instead must include all of the facts and claims Plaintiff wishes to present and all of the defendants he wishes to sue.

Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro

Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance.  Appointments, which are currently being conducted by telephone or video-conference, can be made by calling (415) 782-8982 or emailing federalprobonoproject@sfbar.org. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated:  April 12, 2023

_____
JOSEPH C. SPERO
United States Magistrate Judge